IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>for the benefit of<br>AAROW EQUIPMENT & SERVICES, INC. | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action: 1:09CV861 (AJT/TCB) |
| TRAVELERS CASUALTY AND SURETY<br>COMPANY OF AMERICA | ) ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

In accordance with the Court's Order of December 30, 2009, Plaintiff provides this

Supplemental Brief In Opposition to Defendant's Motion for Summary Judgment and states as

follows:

### SUMMARY OF RESPONSE

The Plaintiff was wrongfully terminated under the Subcontract and pursuant to Section 12.2

is entitled to the reasonable value of the work that it provided. The reasonable value of the work

that Plaintiff provided under the Subcontract is evidenced by the Schedule of Values. Pursuant to

the Schedule of Values, the Plaintiff completed 73.49% of the total work under the Subcontract and

change orders (both written and oral). The total value of the Schedule of Work was $6,118,132.28

and 73.49% of that total value is $4,496,372.34. The Plaintiff has only been paid $4,011,501.61 and

is accordingly due $484,557.42.

The basis for this response is explained below.

1.  **Which provision(s) of the subcontract at issue in this case governs the Subcontract's termination, which occurred on or about July 2009, and why;**

Section 12.2 of the Subcontract governs the July 2009 termination.

In February 2009 Aarow, and the rest of the subcontractors on the project, received a direction to stop work on the project from the General Contractor, Syksa Hennessy ("Syska"), because of a dispute between the General Contractor and the Owner. In June, 2009, Syska requested that the Plaintiff remobilize and return to work on the project. However, as of June 30, 2009, the Plaintiff had not been paid significant sums for work Plaintiff had completed under the Subcontract. The sole basis for termination of Aarow by Syska in July 2009 is the July 1, 2009 letter from the Plaintiff explaining that it was owed significant sums and that, because it was a small company, it was necessary that its outstanding invoices be brought current before it could to return to the job site. Traveler's has argued in their Motion for Summary Judgment that Aarow "wrongly refused to prosecute any of its work because of Syska's rightful exercise of its right to withhold payment until receipt of payment from the Owner." Traveler's Sum. J. Open. Br. p. 11.[1] Not only is such refusal not a grounds for termination under the Subcontract, but the termination of Aarow for requesting past due payment for work performed is directly contrary to the purpose and well established case law of the Miller Act, namely to ensure prompt payment to subcontractors working on Government projects, *Acoustical Concepts, Inc. v. Travelers Cas. and Sur. Co. of America*, 635 F.Supp. 2d 434, 438-441 (E.D.Va. 2009).

Section 12.1 governs termination for failure to perform and provides eight different circumstances for termination, none of which apply to the instant case. While Section 12.1 provides eight grounds for termination, the only two which are even remotely relevant to the case at bar are (2) and (3):

---

[1] *See also,* Transcript of Def. Mot. for Sum. J. at p. 25-26.

If, in the opinion of the Contractor, Subcontractor shall at any time...(2) fail in any respect to prosecute the Work according to the *current schedule*, (3) cause, by any action or omission, the stoppage, or delay of or interference with the work of Contractor or of any other builder or subcontractor.

Subcontract, Section 12.1 (emphasis added).

As Aarow has explained at length in their Opposition to Defendant's Motion for Summary Judgment, and as indicated above, Aarow was forced to leave the job site after months of delays and extensions to the contract completion date of no cause of their own, in addition to non-payment by the Contractor. By the time Aarow notified Syska that they would be unable to remobilize on the job without payment being made current in July of 2009, the schedule contemplated in the original Subcontract had long since been moot. So, Syska cannot rely on subsection 2 of 12.1 for termination of Aarow.

Aarow may not be held in default under subsection 3 of 12.1 either as it was Syska's own refusal to provide payment that created Aarow's inability to remain on the job site. This was clearly set forth in Aarow's letter of July 1, 2009 (Exhibit H to Opposition to Motion for Summary Judgment). It was only after receipt of Aarow's letter explaining that they could no longer continue with the job without payment that Syska noted any alleged default in terms of performance.

By terminating Aarow for requesting payment for worked performed in the months prior to Syska's demand that Aarow return to work, Syska violated the main purposed of the Miller Act, which is to "ensur[e] prompt payment to subcontractors on federal construction projects." *Acoustical Concepts, Inc. v. Travelers Cas. and Sur. Co. of Amer.*, 635 F. Supp. 2d at 440-441.

In *Acoustical Concepts*[2] this Court agreed with the 5th and 9th Circuits by citing both Circuits which have held

> that sureties may not assert a subcontract's unsatisfied "pay when and if paid" clause as a defense to liability on a Miller Act payment bond because a "subcontractor's right of recovery on a Miller Act payment bond accrues ninety days after the subcontractor has completed its work, *not 'when and if'* the prime contractor is paid by the government'.

*Acoustical Concepts*, 635 F. Supp. 2d at 441, n. 9 (citing *United States ex rel. Walton Tech., Inc., v. Weststar Eng'g, Inc.*, 290 F.3d 1999, 1208 (9th Cir. 2002)(quoting *United States ex rel. T.M.S. Mech. Contractors, Inc. v. Millers Mutual Fire. Ins. Co. of Tex.* 942 F.2d 946, 949 n.6 (5th Cir. 1991))). By the July, 2009 request by Syska that Aarow return to the project, Aarow already had a ripe Miller Act claim for non-payment. Defendant's reliance on the subcontract 'pay-when-paid' clause is unpermitted under the Miller Act and Federal law and Plaintiffs submit that any other causes for termination cited by the Defendant for termination are mere pretext.[3] Accordingly, a termination based on the impermissible reliance on the 'pay-when-paid' clause is a Wrongful Termination and governed by subcontract section 12.2.[4]

**2.     The properly calculated amount owed to Plaintiff pursuant to Section 12.1 of the Subcontract, if that provision were found to apply, and the basis for that calculation;**

Subcontract section 12.1 will apply if the Court makes the factual determination that the subcontractor has failed to perform and was properly terminated by the General Contractor. However, if section 12.1 is applicable, neither the Plaintiff nor this Court can make a

---

[2] Defendant Travelers should be well aware of this Court's reasoning and findings in *Acoustical Concepts* as it was the defendant in that case as well.

[3] The exhibits will clearly show that Aarow was wanted back on the project by Syska. It would be disingenuous to suggest that any other reason presented by Syska is the actual cause of termination.

[4] To the extent that Defendant may argue now that its reliance on the pay-when-paid clause leads to a de facto Section 21 termination for convenience, the value of the Work completed would still be measurable by the schedule of values. It would follow, though, that Defendant should not be granted any benefit by claiming a section 21 termination now in light of its mis-reliance on the pay-when-paid clause in the past.

determination as to what is owed until after the work is completed by other subcontractors and appropriate adjustments or calculations are made and properly demonstrated with reasonable evidence. Plaintiff reiterates, though, that a factual dispute exists with respect to the applicability of section 12.1 as the documentation previously submitted makes clear, Aarow stopped working on the job after three consecutive months of non-payment.

Pursuant to the Subcontract subsection 12.1,

> In the event of termination for default, Contractor may, at its option… complete the Work either by itself or through others, by whatever method shall be fully completed and accepted by the Owner. At such time, if the unpaid balance of the Subcontract Price to be paid shall exceed the expense incurred by the Contractor, such expenses shall be paid by the Contractor to the Subcontractor.

This calculation is further complicated as the dispute between the parties involves factual disagreements as to how the storm water management ponds should have been billed, how that work was directed by the Contractor and whether the Plaintiff was appropriately compensated for the work related to their construction efforts. Moreover Syska had previously agreed to pay general conditions of approximately $43,000.00 per month for the three additional months prior to termination. They then orally promised to make general condition payments when Aarow was asked to go back to work, but those payments were never made. More importantly, the outstanding balance for work done under the attached Exhibit 1 remained unpaid for a significant period of time. These outstanding invoices are for work done that are not in dispute and completed months prior to remobilization. Even if all of these figures and their proper accounting were agreed between the parties, without the final completion costs the value owed to Aarow is undeterminable.

3.     **The properly calculated amount of the "reasonable value of Work" pursuant to Section 12.2 of the Subcontract, if that provision were found to apply, and the basis for that calculation;**

Under Subcontract subsection 12.2, in the event of termination by wrongful act of the Contractor, the Contractor is "liable to the Subcontractor for the reasonable value of the Work performed by Subcontractor prior to Contractor's wrongful action plus the direct/actual costs incurred by Subcontractor as a result of Contractor's wrongful action plus... reasonable close-out costs." Plaintiff maintains that the "reasonable value of work" is $484,557.42 and can be determined by looking at the certified AIA applications for payment and the schedule of values that was established and agreed to in those applications for payment. It must be recognized that the original base price of the contract was increased due to change orders, both written and oral. In any case, this Court can determine the reasonable value of the work by reviewing the application for payments that had been made and the valuations placed on that work. It must be remembered that this job was competitively bid and the lowest bid for this work was submitted by Aarow Equipment & Services, Inc. That bid was accepted by Syska and the value of the components of that work were agreed to by the use of the Schedule of Values.

As demonstrated by the Schedule of Values, 73% of the Work was completed by Aarow prior to wrongful termination. The total value of that work is $4,496,372.34 for which Aarow was paid $4,011,501.61. Attached hereto and incorporated herein as Exhibit 2 is a profitability summary which identifies the totality of indirect costs and the total costs. The profit for work completed is a mere 7.2% as identified on Exhibit 2. Though Plaintiff believes that the reasonable value of the work can be calculated by taking the percentage of work completed by the Plaintiff under the schedule of values and comparing the value of that work to the payments

actually received, this Court cannot at this juncture of the case make a conclusion as to what Plaintiff's total damages are without hearing the testimony of the parties.

4. **Whether Plaintiff's entitlement to compensation for work performed is to be determined independent of the Subcontract's provisions pertaining to termination and, if so, how such value is to be calculated including whether the amount of compensation is to be determined on the basis of the percentage of completion method used for billing purposes, and the facts and legal basis supporting the parties' positions.**

As a subcontractor on a government project, Aarow is entitled to payment under the Miller Act. The intent and application of the Miller Act is well established. *See Acoustical Concepts, Inc., supra* and the cases cited therein. When a provision of the subcontract conflicts with the clear intent of the Miller Act, the Court must "look beyond the principal's contractual liability, to the Miller Act itself..." *U.S. ex rel. Walton Technology, Inc. v. Weststar Engineering, Inc.*, 290 F.3d 1199 (9th Cir. 2002). The application of the Act has been addressed at length in relation to "paid when paid" or "paid if paid" clauses and the Court's have consistently held that the Act governs when there is a conflict between the subcontract timing for payment and the prompt payment required under the Act. See *United States ex rel. Woodington Electric Co. v. United Pacific Insurance*, 545 F. 1381 (4th Cir. 1976).

In order to determine the "measure of recovery" the Court must look to the Subcontract. Syska and Aarow executed a fixed sum contract, originally in the amount of $5,444,960.00, and subsequently increased based on additional general conditions and change orders to $6,118,132.28. As Aarow has outlined in the attached Exhibit 1 they have yet to receive payment for work performed under numerous sections or divisions of the contract, none of which is disputed. The Defendant's Motion for Summary Judgment should be denied.

Dated:  January 15, 2010

Respectfully Submitted,

WALSH, COLUCCI, LUBELEY,
EMRICH & WALSH, P.C.

/s/ E. Andrew Burcher
E. Andrew Burcher, VSB #41310
Michael Kalish, VSB #73090
Attorneys for Plaintiff
4310 Prince William Parkway, Suite 300
Prince William, VA 22192
Phone: (703) 680-4664
Fax:  (703) 680-2161
eaburcher@thelandlawyers.com
mkalish@pw.thelandlayers.com

Michael P. Darrow, Esq. (admitted Pro Hac Vice)
HILLMAN, BROWN & DARROW, P.A.
Attorneys for Plaintiff
221 Duke of Gloucester Street
Annapolis, MD 21401
Phone: (410) 263-3131
Fax: (410) 269-5555
mpd@hbdlaw.com

## CERTIFICATE OF SERVICE

I, E. Andrew Burcher, hereby certify that on the 15th day of January, 2010, I filed the foregoing using the CM/ECF system which will send a notice of electronic filing through the Court's electronic filing systems to counsel for the Defendant as follows:

Carter B. Reid, Esq.
James D. Coleman, Esq.
WATT, TIEDER, HOFFAR
& FITZGERALD, L.L.P.
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
creid@WTHF.com
jcoleman@WTHF.com
*Attorneys for Defendant*

/s/ E. Andrew Burcher
Counsel