**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> for the use and benefit of ) <br> AAROW EQUIPMENT & SERVICES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> TRAVELERS CASUALTY AND SURETY ) <br> COMPANY OF AMERICA, ) <br> ) <br> Defendant. ) <br> ) | Case No. 1:09cv861 (AJT/TCB) |

**DEFENDANT'S REPLY TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Travelers hereby submits its reply to Plaintiff's supplemental brief in opposition to Traveler's Motion for Summary Judgment. In response to Aarow's answers to the Court's questions, Travelers states as follows:

**DISCUSSION**

I. **Which provision(s) of the subcontract at issue in this case (the "Subcontract") govern the Subcontract's termination, which occurred on or about July 2009 and why?**

In its failed attempt to argue that Subcontract Section 12.2 governs, Aarow correctly quotes Travelers statement that Aarow wrongly refused to prosecute the work, but then argues that "such refusal is not grounds for termination under the Subcontract." Pl. Supp. Opp. Brief at 2. Thus Aarow argues that its abandonment of the work cannot be a breach of the Subcontract. It supports this incredible assertion by arguing, without bases, that the project was delayed thus

1

relieving Aarow of its obligation to finish the project. Aarow ignores its own italicized quotation of one of the grounds for termination under Section 12.1: a failure to "prosecute the Work according to the *current schedule.*" Pl. Supp. Opp. Brief at 3 (quoting Subcontract Section 12.1). Aarow claims the *original* project schedule was "moot" as of July 2009, but Aarow does not and cannot dispute that its abandonment of the work on or about July 1, 2009 was a failure to prosecute the Work according to the then *current schedule*.

Aarow completes its argument that it cannot be defaulted for nonperformance under Section 12.1 by completely ignoring its obligation to continue to work in the event of owner nonpayment. See Def. Supp. Brief, Ex. 1, Subcontract Section 4.4. Aarow seems to argue, without citation to the Act or case law, that the Miller Act provides an excuse for project abandonment. It does not. In this case, that suggestion is especially inappropriate because a Miller Act claim does not accrue until "90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made." 40 U.S.C. § 3133(b). Here, Aarow's claim is wholly based on the work it allegedly performed in the three months directly preceding its abandonment of the project. See Compl. ¶¶ 14-18. Therefore, Aarow had no Miller Act claim at the end of June 2009 on which it could found its fantastic argument that the Miller Act excuses its default.

For Aarow's July 1, 2009 abandonment of the project to be governed by Section 12.2, Aarow would have to show some basis for its action to be excused under the Subcontract or at law. Aarow has provided no such excuse. Therefore, Syska was justified in terminating Aarow for default under Section 12.1, and the terms of that section govern the termination.

**II.     The Properly calculated amount owed to Plaintiff pursuant to Section 12.1 of the Subcontract, if that provision were found to apply, and the basis for that calculation.**

Aarow agrees with Travelers that under Section 12.1 no amount is currently due Aarow. Aarow correctly notes that all completion costs of the project have not yet been incurred, Pl. Supp. Opp. Brief at 5, therefore they cannot be deducted from Aarow contract balance to determine the balance that Aarow would owe Syska (or vice versa). Consequently, Aarow has no basis within Section 12.1 for a current claim against Syska or its surety.

In a transparent attempt to distract the Court, Aarow alleges, falsely, that Travelers does not dispute the legitimacy of Aarow's invoices for work it allegedly performed in April through June, 2009. That dispute notwithstanding, unpaid invoices are irrelevant under the terms of Section 12.1 because the provision states that a subcontractor is not entitled to any further payments when it is in default. In theory, this provision could lead to a harsh, though enforceable, result wherein payments for legitimate claims and past billings are rightfully withheld until completion costs are known. In this case, however, Aarow's own cost data shows that it has been paid hundreds of thousand of dollars more than its actual costs. Those actual costs incorporate all of Aarow's direct costs for performing Subcontract work and disputed work including the April through June general conditions and the ponds work. See Def. Supp. Brief, Ex. 5, Aarow Dep. at 138:1-141:1. Therefore, even if Aarow had not defaulted, it had already been paid more than it had earned.

**III.    The properly calculated amount of the "reasonable value of Work" pursuant to Section 12.2 of the Subcontract, if that provision were found to apply, and basis for that calculation.**

Aarow's assertion that the reasonable value of its work is determined by one of its

schedules of values is unsupported by reference to case law, affidavit, testimony or any other project record. Aarow notes that a schedule of values was used as a vehicle of convenience for periodic payments, and observes that the Subcontract sum was determined by competitive bidding. Unfortunately for Aarow's argument, the only connection between Aarow's bid for the *entire project* and its various schedules of values are their totals. Aarow provides no evidence that its various self-prepared breakdowns of the Subcontract sum are reasonable expressions of the value of portions of the work or that they were "approved" as such. Furthermore, Aarow cites no case law supporting that proposition.[1] In short, Aarow has provided nothing to rebut "judicial recognition" that such breakdowns are unreliable expressions of the value of portions of the work. See General Ry. Signal Co. v. Washington Metro Area Transit Authority, 875 F.2d 320, 325 (D.C. Cir. 1989).

Aarow attempts to cloud the calculation of reasonable value of work by including a "profitability summary" dated January 6, 2010 with its supplemental brief. The provenance of this document is not established. It was not provided in discovery and is dated long after the discovery deadline. More importantly the existence of such documents was denied by Aarow's designated representative. See Mot. Summ. J., Ex. E., Aarow Dep. at 161:14-22. More significantly, Aarow represented to this Court that it lacked the capacity to produce such a document.

> MR. DARROW:   … And for us to have to go back, as a small company, and somehow try to identify indirect costs and overhead and the profit and all of that, that's -- small companies don't track and keep those kinds of records, …
> . . .
> THE COURT:   So the way the case has been worked up, you're not in a

---

[1] Aarow provides no case law in spite of its representation to this Court during oral argument that such cases are "legion." Tr. of Def. Mot. for Summ. J. at 18:13-25

> position to prove costs whether it's categorized as indirect costs or G&A or anything else above the $3.473 million?
> MR. DARROW:     The only thing they would be able to say is based on our Schedule of Values, we're to that amount.  If we don't get profit, minus 5 to 10 percent.  That's how they've calculated their total costs throughout historically.

Tr. of Def. Mot. for Summ. J. at 33:3-7, 34:14-225.

Under the circumstances, this profit summary is nothing more that an untimely and unsupported allegation in a pleading.  Under Fed. R. Civ. P. 56(e), Aarow may not rely upon it to assert that there is an issue of material fact.  Id.  Travelers requests that the Court give this document no weight.[2]

Aarow's actual costs incurred, excluding unpaid bills, plus its anticipated overhead and profit remain the maximum reasonable calculation of amounts due Aarow.  However these values are totaled, whether overhead and profit are included, Aarow has been paid more than that sum and is owed nothing.

**IV.     Whether Plaintiff's entitlement to compensation for work performed is to be determined independent of the Subcontract's provisions pertaining to termination and, if so, how such value is to be calculated, including whether the amount of compensation is to be determined on the basis of the percentage of completion method used for billing purposes, and the facts and legal basis supporting the parties' positions.**

Aarow overstates the scope and intent of the Miller Act implying that it provides an independent basis for entitlement to payment.  The case law states otherwise.  See, e.g., Acoustical Concepts, Inc. v. Travelers Cas. & Sur. Co. of Am., 635 F. Supp. 2d 434 (E.D. Va. 2009) (stating "[i]t is self-evident that the Subcontract must be examined to ascertain what amount is due a Subcontractor").  In Acoustical Concepts, this court did note a distinction

---

[2] Travelers notes that even this questionable document shows that the $4,011,501.61 that Aarow admits it has received is greater than Aarow's alleged direct and indirect costs combined.

between contract clauses which affect the timing of recovery and those that affect the measure of recovery with the former being disfavored.  See id. at 441 n.10.  Aarow seeks to have this narrow exception swallow the rule.  Section 12 of the Subcontract is a clause that defines the measure of Aarow's recovery in case of termination.  Under Section 12.1, its recovery measures to nothing, and under 12.2, it measures to actual cost.  Aarow cites no case law where the language of the Miller Act would override these *measure of recovery* provisions.

Abandoning its suggestion that there is a right to recovery independent of the Subcontract, Aarow states the Court must look to the Subcontract.  Supp. Opp. Brief at 7.  However, in calculating the amount due under the Subcontract, Aarow relies on a fictional Subcontract sum and merely repeats that it should be paid percentages complete against that fictional sum.  Aarow again relies on the false allegation that the amounts billed are undisputed, but more importantly, Aarow provides no legal justification for using percent complete as a basis for payment when a subcontractor is terminated.  See *supra* note 1.

Aarow's claim reduces to an assertion that Aarow must be paid what it has billed regardless of what it is equitably due, regardless of what it is due under the Subcontract, and regardless of what it is due under law.  In fact, Syska has paid Aarow more than Aarow is due by any measure, and thus Aarow has no claim against Syska or its surety, Travelers.

## **CONCLUSION**

For the foregoing reasons, Travelers, requests that this Court grant its Motion for Summary Judgment and any other relief that it deems just and proper.

Dated: January 26, 2010

                Respectfully submitted,

                _____/s/_____
                Carter B. Reid
                VA Bar No. 27192
                James D. Coleman
                VA Bar No. 70907
                WATT, TIEDER, HOFFAR
                 & FITZGERALD, L.L.P.
                8405 Greensboro Drive
                Suite 100
                McLean, Virginia 22102
                Tel: (703) 749-1000
                Fax: (703) 893-8029
                creid@WTHF.com
                jcoleman@WTHF.com
                *Attorneys for Defendant Travelers Casualty and Surety Company of America*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of January, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Eugene Andrew Burcher
>WALSH COLUCCI LUBELEY EMRICH & WALSH PC
>4310 Prince William Parkway
>Suite 300
>Prince William, VA 22192
>Tel: 703-680-4664
>Fax: 703-680-2161
>eaburcher@thelandlawyers.com
>Counsel for Aarow Equipment & Services, Co.

>_____/s/_____
>James D. Coleman
>VA Bar No. 70907
>WATT, TIEDER, HOFFAR
> & FITZGERALD, L.L.P.
>8405 Greensboro Drive
>Suite 100
>McLean, Virginia 22102
>Tel: (703) 749-1000
>Fax: (703) 893-8029
>jcoleman@WTHF.com
>*Attorney for Defendant Travelers Casualty*
>*and Surety Company of America*