IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>*for the use and benefit of* )<br>AAROW EQUIPMENT & SERVICES, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>TRAVELERS CASUALTY AND SURETY )<br>COMPANY OF AMERICA, )<br>)<br>Defendant. )<br>_____ ) | Case No. 1:09-cv-00861 (AJT/TCB) |

## MEMORANDUM OPINION

This action, brought pursuant to the Miller Act, 40 U.S.C. § 3131 *et seq.*, pertains to a payment dispute between Plaintiff Aarow Equipment & Services, Inc. ("Aarow" or "Plaintiff") and Syska Hennessy Group Construction, Inc. ("Syska") arising under a subcontract (the "Subcontract") to a prime contract (the "Prime Contract") between Syska and the United States for the construction of a National Guard training facility.

On or about August 3, 2009, Aarow filed this action against Travelers Casualty and Surety Company of America ("Travelers" or "Defendant"). In its Complaint, Aarow alleges that Syska breached the Subcontract by failing to pay Aarow $484,870.71 and that Travelers is now required to pay that amount under the payment bond Travelers issued to Syska pursuant to the Miller Act.

On November 13, 2009, Travelers moved for summary judgment on the grounds that under the terms of the Subcontract, Aarow cannot establish that it is entitled to recover any amounts more than it has already been paid. Aarow has opposed that

motion; and a hearing on that motion was held on Friday, December 11, 2009, after which the Court took the motion under advisement. On December 30, 2009, the Court ordered the parties to submit supplemental briefing.[1] Upon review of Defendant's motion, the memoranda filed in support thereof and opposition thereto, and the supplemental briefing, the Court finds that there are no genuine issues of material fact and that judgment as a matter of law should be entered in favor of Travelers.

## I. FACTS

In May, 2007, Syska entered into a Prime Contract with the United States government for the construction of the National Guard Regional Training Institute at Fort Belvoir, Virginia (the "Project"). On or about June 20, 2007, Travelers and Syska executed a payment bond, as required by the Miller Act, 40 U.S.C. § 3131 *et seq.* (the "Miller Act"), under which Travelers bound itself as surety under the Prime Contract. On or about June 21, 2007, Syska awarded Aarow a Subcontract in the amount of $5,444,960 to perform a variety of work on the Project, including site work, concrete work, metals work, rough and finish carpentry, building insulation and sealants, doors and windows, interior walls and ceilings, and specialty equipment (the "Work").

---

[1] The Court requested supplemental briefing on the following issues: (1) Which provision(s) of the Subcontract governs the Subcontract's termination, which occurred on or about July 2009, and why; (2) The properly calculated amount owed to Plaintiff pursuant to the Subcontract's provision governing proper termination for default of the Subcontract, if that provision were found to apply, and the basis for that calculation; (3) The properly calculated amount of the "reasonable value of Work" pursuant to the Subcontract's provision governing improper termination for default of the Subcontract, if that provision were found to apply, and the basis for that calculation; and (4) Whether Plaintiff's entitlement to compensation for work performed is to be determined independent of the Subcontract's provisions pertaining to termination and, if so, how such value is to be calculated, including whether the amount of compensation is to be determined on the basis of the percentage of completion method used for billing purposes, and the facts and legal basis supporting the parties' positions. Each party has filed a brief and reply brief addressing these issues.

The original term of the Subcontract expired on October 31, 2008. On November 12, 2008, Syska issued a change order in the amount of $125,348.64 for Aarow to perform "Additional General Conditions for 3 Months."[2] Pursuant to that change order, Aarow continued working until January 31, 2009.[3]

On February 11, 2009, Syska ordered all subcontractors working on the Project to stop work. On or about March 24, 2009, Syska directed Aarow to return to work, even though Syska and the government had not executed a modification extending the Prime Contract and, therefore, no change order could be issued to Aarow for payment during the extended period of Work. Nevertheless, Aarow continued to work for approximately three months without a change order.

A portion of Aarow's Work on the Project included construction of sedimentary ponds, referred to as the "Pond Work." Although the Pond Work was outside the scope of the Subcontract and no change order either between the government and Syska or Syska and Aarow was ever issued, Syska instructed Aarow to perform the Pond Work and bill for the Pond Work against the amounts included in the Subcontract for what the parties referred to as "finishes." Aarow performed the Pond Work and billed Syska as instructed. Syska billed the National Guard for the Pond Work for approximately $484,980, under the category of "finishes." The government paid that amount to Syska for the "finishes," which was actually the Pond Work, and Syska paid Aarow. At some point thereafter, the government determined that the Pond Work had not been properly

---

[2] Ultimately, Syska implemented four change orders in connection with the Subcontract that increased the total amount of the Subcontract by $145,323.64 to $5,590,283.64.

[3] In fact, Aarow continued working beyond January 31, 2009, ceasing work temporarily only pursuant to Syska's February 11, 2009 directive.

3

billed, and withheld certain other payments from Syska based on what the government considered to be its improper payment for the Pond Work that it now said was unauthorized. Based on the government's withholding of these funds from Syska, Syska withheld payment from Aarow on certain of its other outstanding invoices in the amount that was being withheld by the government.

On July 1, 2009, Aarow sent Syska a letter stating that due to the unpaid amounts that Syska owed Aarow, Syska had breached the Subcontract and that unless Syska paid those amounts immediately, Aarow would leave the Project by the end of that week. On July 17, 2009, Syska wrote to Aarow, notifying Aarow that Aarow was in default of the Subcontract for failing to perform Work on the Project. On July 23, 2009, Syska wrote Aarow that it was terminating the Subcontract due to the alleged default, pursuant to Section 12.1 of the Subcontract. On August 3, 2009, Aarow filed this action to obtain under Travelers' payment bond the unpaid amount billed by Aarow to Syska.

Sections 12.1 and 12.2 of the Subcontract specifically address the amount payable to Aarow upon termination of the Subcontract, whether the termination was proper based on Aarow's default or wrongful based on Syska's conduct. Section 12.1 of the Subcontract pertains to situations where a subcontractor defaults and states in pertinent part:

> If, in the opinion of Contractor, Subcontractor shall at any time (1) refuse or fail to provide sufficient properly skilled workmen or materials of the proper quality, (2) fail in any respect to prosecute the Work according to the current schedule, (3) cause by any action or omission, the stoppage, or delay of or interference with the work of Contractor or of any other builder or Subcontractor . . . . then, after serving three (3) days written notice, unless the condition specified in such notice shall have been eliminated within such three (3) days, the Contractor may at its option . . .

4

> terminate the Subcontract for default. . . . In the event of termination for default, Contractor may, at its option, . . . complete the Work either by itself or through others, by whatever method Contractor may deem expedient. **Subcontractor shall not be entitled to receive any further payment until the Work shall be fully completed and accepted by Owner.** At such time, if the unpaid balance of the Subcontract Price to be paid shall exceed the expense incurred by Contractor, such excess shall be paid by Contractor to Subcontractor. However, if such amount incurred by Contractor shall exceed such unpaid balance, then, Subcontractor shall pay Contractor the difference within five (5) business days following demand by Contractor. Subcontractor shall pay all reasonable costs of collection, if any.

(emphasis added). Section 12.2 of the Subcontract pertains to situations where the contractor wrongfully terminates:

> If Contractor wrongfully (as adjudicated by a competent judicial or quasi judicial authority) exercised any option under this [Subcontractor's failure to perform] article, **Contractor shall only be liable to Subcontractor for the reasonable value of Work performed by Subcontractor prior to Contractor's wrongful action** plus the direct actual costs incurred by Subcontractor as a result of Contractor's wrongful action plus, in the case of a wrongful termination for default, reasonable close-out costs, less prior payments made, upon Contractor's receipt of payment for same from Owner [the government]. Subcontractor waives any right to incidental or consequential damages. The Subcontractor's remedy under this Article shall be exclusive and nothing herein shall bar withholdings by Contractor permitted by any other provision of this Subcontract.

(emphasis added).

Travelers claims that the extent of Aarow's recovery must be measured under Section 12.1 since Syska properly terminated the Subcontract for default after Aarow refused to perform. More specifically, Travelers claims that any additional amounts to be paid to Aarow, if any, under Section 12.1 cannot be calculated until the Project is

5

complete and this action must be dismissed since Aarow cannot yet establish any damages as a matter of law. With respect to Syska's failure to pay Aarow's outstanding invoices, Travelers claims that Syska's non-payment did not justify Aarow's refusal to continue performing, particularly in light of the "pay-when-paid" provision of the Subcontract, and that in no event is Aarow entitled to recovery any additional payments under Section 12.1. Travelers argues in the alternative that if, as Aarow claims, Syska's termination was wrongful and Section 12.2 applies, Aarow has already received more than the "reasonable value" of the completed Work since, according to Aarow's own records, Aarow incurred costs of only $3,225,931.55 to perform the Work for which it received $4,011,501.61. Accordingly, Travelers contends that in no event is Aarow entitled to any additional payments under either Section 12.1 or Section 12.2 and summary judgment is therefore appropriate.

In its Complaint, Aarow does not seek recovery under Section 12.1 and essentially concedes that if Section 12.1 applies, this action is "premature." Rather, in opposing summary judgment, Aarow claims that Syska wrongfully terminated the Subcontract for default and Section 12.1 does not apply. In this regard, Aarow claims that it was entitled to stop working after Syska failed to pay its outstanding invoices, that the "pay-when-paid" provision is not an available defense to Travelers in this action under the Miller Act, and that Aarow is entitled to additional compensation beyond what it has been paid. With respect to additional compensation, Aarow claims that the Subcontract was bid and awarded as a fixed price contract in the amount of

$6,118,132.28[4] and that, based on its billings as a percentage of the total Subcontract price, it had completed 73.49% of the Work on the Project as of the time that Syska wrongfully terminated the Subcontract in July, 2009. Accordingly, Aarow claims that it is actually due $4,496,372.34 under the Subcontract (73.49% of $6,118,132.28); and since it is undisputed that Syska has paid Aarow only $4,011,501.61 for Work on the Project, Aarow is entitled to recover from Travelers under the payment bond the difference, or $484,870.73. Alternatively, Aarow claims that there exists, in any event, fact issues concerning the "reasonable value" of its work and that summary judgment is not appropriate.

## II.   LEGAL STANDARD

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

---

[4] Aarow claims this Subcontract price for the purposes of calculating its right to additional compensation based on increases in the price of the Subcontract necessary to reflect the amount of change orders that were or should have been implemented for the Pond Work and additional general conditions.

475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

### III. ANALYSIS

The issue for the Court is whether there exists a genuine issue of material fact concerning Aarow's right to recovery and, if not, whether Travelers is entitled to judgment as a matter of law. The Court concludes that there are no genuine issues of material fact, that the amount owed to Aarow, if any, is properly calculated pursuant to Subcontract Section 12.1, and that under that Section, Aarow cannot demonstrate that it is owed any more than it has already been paid. Accordingly, Travelers is entitled to judgment as a matter of law in its favor.

A. **The Subcontract Governs Whether and to What Extent Aarow May Recover Under the Payment Bond.**

Aarow appears to take the position that under the Miller Act it is entitled to recover what is in effect the "benefit of its bargain" based on the fixed price Subcontract, even if that measure of recovery is not specifically authorized under the Subcontract. In

support of this contention, Aarow cites *United States ex rel. Woodington Elec. Co. v. United Pacific Ins. Co.*, 545 F.2d 1381, 1383 (4th Cir. 1976), in which the Fourth Circuit stated that the Miller Act's requirement of prompt payment applies, even if it is in conflict with the terms of an applicable subcontract. Based on the primacy of the Miller Act, Aarow argues that its recovery under the payment bond is determined by the amount of Work it completed under the Subcontract as of the time Syska terminated the Subcontract, calculated as a percentage of the total Subcontract price, regardless of whether its recovery is measured under Section 12.1 of the Subcontract, by "the reasonable value" of the Work performed under Section 12.2, by principles of *quantum meruit*, or by general breach of contract damage principles under Virginia law. Aarow therefore contends that it is entitled to recover under the payment bond the difference between what Aarow billed Syska and what Aarow has been paid by Syska, which is an amount equal to $484,870, regardless of any specific provisions in the Subcontract.[5]

---

[5] Aarow alternatively argues that if the Subcontract governs its right to recover additional payments, it is entitled to recovery of "reasonable value" of Work under Section 12.2 and that the "reasonable value" of its completed Work is equal to the amount it billed for the completed Work, since Syska and Aarow had agreed to a Schedule of Values that established a payment schedule for Work completed. Travelers contends that even if Aarow is entitled to recover under Section 12.2, the "reasonable value" of its Work is not reflected in the payment schedule, since such a schedule typically "front loads" payments and does not have any demonstrable relationship to the actual value of the work performed. Rather, Travelers argues that the reasonable value is established through what it actually cost Aarow to perform the Work, together with a reasonable profit for that Work, and that Aarow has provided in discovery nothing in support of the completed Work's "reasonable value" other than costs incurred of approximately $3.2 million. Aarow responds that its costs of $3.2 million are only "direct" costs and that if "reasonable value" is to be measured as Travelers proposes, additional amounts need to be considered for indirect costs and a reasonable profit, and that when such additional amounts are considered, the "reasonable value" of its completed work exceeds what it has been paid by some amount, and that issues of fact exist precluding summary judgment.

Travelers, on the other hand, argues that the Subcontract governs how Aarow's recovery is to be determined, whether or not Syska wrongfully terminated the Subcontract, and the Court must, therefore, look to the terms of the Subcontract, even in a Miller Act action.

As an initial matter, the Court concludes that the amount due to Aarow is properly determined under the mechanisms for calculating recovery set forth in Section 12.1 or 12.2, depending on the circumstances of the termination. See *Woodington Elec. Co.*, 545 F.2d at 1383 (holding with respect to a Miller Act claim that the amount of "sums justly due" from a surety to a subcontractor is to "be determined by reference to the subcontract"); *See also, United States ex rel. Acoustical Concepts, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 635 F. Supp. 2d 434 (E.D. Va. 2009) (noting in a Miller Act action, "[i]t is self-evident that the Subcontract must be examined to ascertain what amount is due a subcontractor," although finding that the terms of the subcontract in that case did not govern issues of set-off or timing of recovery).[6] Because it is undisputed that Syska terminated the Subcontract for default, the amount of payment owing to Aarow is governed by either Section 12.1 or 12.2, depending on whether the termination for default was proper.

---

In support of this position, Aarow submitted in its supplemental briefing an unverified schedule, not previously produced in discovery, claiming such indirect costs and profits. Based on this Court's conclusion that Section 12.1 applies, this Court does not reach the issues raised with respect to the measurement of "reasonable value" under Section 12.2.

[6] While Aarow is correct that "[i]t is well settled that sureties may not rely on subcontract terms affecting the timing of a subcontractor's recovery for providing labor and material that conflict with the Miller Act's purpose of ensuring prompt payment to subcontractors on federal construction projects," the issue here is not one of timing, but one of amount, and that issue is to be resolved by looking to the terms of the Subcontract. *Acoustical Concepts, Inc.*, 635 F. Supp. 2d at 441.

## B. Syska's Termination of the Subcontract was Proper and Therefore Section 12.1 of the Subcontract Applies

The Court next determines whether Section 12.1 or 12.2 of the Subcontract applies to Syska's termination of the Subcontract. To make this determination, the Court must decide whether Syska's termination of Aarow for default was proper or not. The Court concludes that the termination was proper.

The facts pertinent to Syska's termination of Aarow are undisputed. On July 1, 2009, Aarow notified Syska that it would cease work by the end of that week. Syska provided Aarow with notice on July 17, 2009 that if Aarow failed to eliminate its performance failures, outlined in detail in the written notice, Syska would terminate the Subcontract for default. Aarow did not go back to work or otherwise cure the performance failures. Accordingly, on July 23, 2009, Syska terminated Aarow for default for "fail[ing] in any respect to prosecute the Work according to the current schedule." Subcontract Section 12.1(2).

Under Section 12.1, Syska's termination for default was proper if, in Syska's opinion, Aarow refused or failed to "provide sufficient properly skilled workmen or materials of the proper quality," or "prosecute the Work according to the current schedule," or if Aarow "cause[d] by any action or omission, the stoppage, or delay of or interference with the work of Contractor or of any other builder or Subcontractor." Syska, as evidenced by its pre-termination notice dated July 17, 2009 and its termination letter dated July 23, 2009, was of the opinion that Aarow had failed to perform and there is no evidentiary basis in this summary judgment record to conclude otherwise. It is also undisputed that Syska properly provided notice of termination as required by the Subcontract. Accordingly, the Court is able to conclude, based on undisputed facts, that

Section 12.1 clearly and unambiguously gave Syska the right to terminate Aarow for stopping Work after providing three days notice, that Syska's termination was pursuant to Section 12.1, and that Aarow's recovery is to be measured under that Section.

Aarow contends, however, that Syska's failure to pay Aarow constituted a breach of the Subcontract, justifying its Work stoppage and abandonment of the work site and also preventing Syska from relying on Section 12.1. Travelers, on the other hand, argues that Syska properly withheld payment to Aarow pursuant to the Subcontract's "pay-when-paid" clause because Syska had not been paid by the government and, therefore, Syska's non-payment did not justify Aarow's refusal to continue performance. Aarow responds that under settled law, a surety under the Miller Act, such as Travelers, may not avoid payment under a payment bond based on a "pay-when-paid" provision.

Section 4.4 of the Subcontract states, in relevant part:

> Conditioned upon the satisfactory progress of the
> Subcontractor [Aarow] . . . and Contractor [Syska] has
> received payment from the Owner [the government] THEN
> will make monthly payments to the Subcontractor.
> Subcontractor acknowledges and agrees that in the event
> payment is not made to Contractor for any reason . . .
> Subcontractor shall look exclusively to Owner for payment
> of any and all funds due under this Contract. Subcontractor
> further agrees that the delay in payment or non payment by
> the Owner does not create any separate obligation of
> Contractor to pay regardless of the extent of the delay.

Pay-when-paid clauses are enforceable in Virginia if they clearly express the parties' intent to shift the risk of the owner's insolvency to the subcontractor. *Universal Concrete Products v. Turner Constr. Co.*, --- F.3d ---, 2010 WL 572875 (4th Cir. 2010) ("Pay-when paid clauses are enforceable in Virginia 'where the language of the contract in

question is clear on its face'") (quoting *Galloway Corp. v. S.B. Ballard Constr. Co.*, 464 S.E.2d 349, 250 Va. 493 (1995)).

The Court concludes that Section 4.4 of the Subcontract clearly and unambiguously expresses Aarow's and Syska's intent to shift the risk of the government's non-payment to Aarow. The Court further finds, based on the summary judgment record, that there is no genuine dispute that Syska did not receive payment from the government for Aarow's Work on the Project from March 2009 through July 2009. Mem. in Support at Exh. A (Affidavit of Robert F. Geremia) at ¶ 13; Mem. in Opp. at Exh. C (Deposition of Robert F. Geremia) at 73:20-74:5. Accordingly, the pay-when-paid clause in this case is enforceable and Aarow cannot justify its Work stoppage based on Syska's failure to pay Aarow.[7] Because Aarow stopped Work in violation of the Subcontract, and because the Subcontract permits Syska to terminate the Subcontract on those grounds, Syska properly terminated the Subcontract for default pursuant to Section 12.1.

Aarow does not directly address the enforceability of the pay-when-paid clause as to Syska, but instead argues that the pay-when-paid clause is not enforceable as to Travelers under the Miller Act. Aarow is correct that a surety such as Travelers may not withhold payment under the payment bond based on the pay-when-paid clause. *Moore Brothers Co. v. Brown & Root, Inc.*, 207 F.3d 717, 723 (4th Cir. 2000) (holding under Virginia law that a surety may not "assert the principal's defense based on 'pay when

---

[7] Because there is no genuine issue of fact concerning the government's failure to pay Syska, this Court need not consider whether Aarow was obligated to continue performance in any event, given the language of Section 12.1, the purposes of the Miller Act, and the protections afforded under the payment bond required under the Miller Act.

paid' language in the subcontract, where the surety did not expressly incorporate the 'pay when paid' language into the contract payment bond," explaining that the "purpose of securing a surety bond contract is to insure that claimants who perform work are paid for their work *in the event that the principal does not pay.* To suggest that non-payment by the Owners absolves the surety of its obligation is nonsensical, for it defeats the very purpose of a payment bond") (emphasis in original). *See also U.S. ex rel. Walton Technology, Inc. v. Weststar Engineering, Inc.*, 290 F.3d 1199, 1208 (9th Cir. 2002) ("Permitting Defendants to avoid liability on the Miller Act payment bond based on the unsatisfied 'pay if and when paid' clause in the Subcontract Agreement would prevent Walton from exercising its rights in accordance with the express terms of the Miller Act."). However, Travelers is not arguing that the pay-when-paid clause precludes Aarow's entitlement to amounts otherwise properly payable under the payment bond. Rather, Traveler argues, correctly, that the "pay-when-paid" provision is properly considered in determining whether Syska's termination for default was proper.

For the above reasons, the Court concludes that Section 12.1 of the Subcontract provides the mechanism for calculating the extent of Aarow's recovery, if any.

### C. Aarow is not Entitled to Recovery Under Section 12.1 of the Subcontract

Because the Court concludes that Syska's termination for default was proper, the Court must now determine what amount, if any, is due to Aarow as calculated through the mechanism provided in Section 12.1 of the Subcontract. As stated above, Section 12.1 provides that "Subcontractor shall not be entitled to receive any further payment until the Work shall be fully completed and accepted by Owner." Aarow concedes that if Section 12.1 were found to apply, it would not be entitled to recovery. Plaintiff's Brief in

Reply to Defendant's Supplemental Mem. at 4-5 ("Both Plaintiff and Defendant agree that should this Court . . . find[] that Plaintiff was terminated in accordance with Subcontract section 12.1, and in accordance with the purposes of the Miller Act, that Plaintiffs [sic] damages cannot be determined by the Court at this time due to the incomplete status of the project.").

The Court finds that because Section 12.1 applies to the Subcontract, any claim for damages at this time under Section 12.1 is purely speculative because the Work has not yet been completed or accepted by the government. "In a . . . breach of contract action, it is a 'well-established rule that a plaintiff has the burden to prove the amount of damages with reasonable certainty.'" *Stewart Title Guar. Co. v. Virginia Commonwealth Title Co.*, 64 F.3d 659, 1995 WL 501354, *3 (4th Cir. 1995) (quoting *Estate of Taylor v. Flair Prop. Assoc.*, 448 S.E. 2d 413, 416 (Va. 1994)); *PBM Prods, LLC v. Mead Johnson Nutrition Co.*, --- F. Supp. 2d ---, 2009 WL 5216948, *3 (E.D. Va. 2009) ("Damages that are contingent, speculative, and uncertain are not recoverable because they cannot be established with reasonable certainty."). Further, Aarow's Complaint does not allege that Syska failed to pay future, undeterminable damages based on Syska's proper termination for default but rather alleges a breach of contract claim for failure to pay for earlier Work performed. Accordingly, because the termination for default was proper, Aarow is not owed anything under the Subcontract and Travelers has no payment obligations to Aarow.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is granted.

An appropriate Order will issue.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
March 16, 2010